```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/16/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUTH SARIT, *on behalf of herself and others similarly situated*,

                          Plaintiff,

                   v.

WESTSIDE TOMATO, INC. *doing business as* ARTE CAFÉ, ROBERT MALTA, MARC LNU, and ERNESTO MATIAS LOPEZ,

                          Defendants.

No. 18-CV-11524 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Ruth Sarit filed this action against Defendants Westside Tomato Inc. d/b/a Arte Café ("Arte Café"), her former employer, as well as Robert Malta, a principal of Arte Café, "Marc"[1] and Ernesto Matias Lopez, employees of Arte Café, "John Does 1-50," and "Business Entities A-J," asserting claims for violations of Title VII, the Fair Labor Standards Act, the New Yok Labor Law, and battery. Now before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is denied in part and granted in part.

## BACKGROUND

### I. Factual Background

The following facts are drawn from Plaintiff's Complaint, Dkt. 1 ("Compl."), and are assumed to be true for the purpose of resolving the pending motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

---

[1] The last name of Defendant "Marc" is unknown. *See* Compl. ¶ 7.

### A. Plaintiff's Employment at Arte Café

Plaintiff Ruth Sarit is a "naturalized citizen of Dominican heritage with her national origin being the Dominican Republic" who worked as a waitress at Arte Café, an Italian restaurant located in New York City. Compl. ¶¶ 12, 14-15. Plaintiff was employed at Arte Café throughout the spring of 2018, until she was terminated in or around May 2018.[2] *Id.* ¶¶ 22, 28-31. During her employment, Plaintiff was paid weekly "by way of payroll," specifically in the form of "a hybrid of minimum salary in the amount of $8.65 per hour," plus "cash tips." *Id.* ¶¶ 15-16. Plaintiff asserts that, when she was initially hired at Arte Café, she signed a "wage notice form" indicating that she was being paid weekly. *Id.* ¶ 17.

### B. Harassment, Discrimination, and Assault by Lopez

Plaintiff alleges that, beginning around March 1, 2018, Defendant Lopez, who was employed as a bartender at Arte Café, engaged in a "campaign of harassment against Plaintiff, making numerous derogatory comments about her" based on her national origin. *Id.* ¶¶ 21-22. Plaintiff asserts that she raised "these issues of discrimination in the workplace to [Defendant] Marc," her manager, "[n]umerous times," but that Marc ignored her complaints. *Id.* ¶¶ 23, 26.

Plaintiff also alleges that Lopez physically assaulted her several times during her employment. Specifically, Plaintiff alleges that, on or about April 15, 2018, Lopez physically assaulted her by "pushing her at the bar area." *Id.* ¶ 24. She further alleges that, on May 18, 2018, Lopez again assaulted her, this time by striking her "in her back near the bar area." *Id.* ¶ 27. Plaintiff asserts that while Lopez assaulted her, he also made "disparaging comments about her

---

[2] Plaintiff's Complaint does not specify her dates of employment at Arte Café. Defendants maintain that Plaintiff was employed from November 13, 2017 to approximately May 20, 2018. *See* Defs. Mot., Dkt. 46, at 4. As all events relevant to Plaintiff's claims appear to have occurred between approximately March 1, 2018 and May 25, 2018, and Plaintiff does not dispute Defendants' assertion regarding her dates of employment, the Court accepts, for purposes of this motion, that Plaintiff was employed at Arte Café from approximately November 2017 to May 2018.

national origin." *Id.* ¶ 25. Plaintiff asserts that she reported Lopez's assaults to Marc, but that he "refused to take any action and specifically ignored her complaints." *Id.* ¶¶ 26, 28. When reporting the May 18, 2018 assault in particular, Plaintiff allegedly told Marc that "if actions were not taken, she would go to the police." *Id.* ¶ 28. According to Plaintiff, Marc "refused to take action," making it clear that "they would take no action against Lopez." *Id.* ¶ 29. Plaintiff also asserts that Marc "made other disparaging comments about Plaintiff" in response to these reports. *Id.* Subsequently, Plaintiff allegedly "went to a local police department," which took a report from her. *Id.* ¶ 30. According to the Complaint, about one week after the May 18, 2018 assault and Plaintiff's report to Marc, Plaintiff was terminated from her job at Arte Café. *Id.* ¶ 31. Plaintiff asserts that her fiancé, who was also employed at Arte Café at the time, was terminated "for no reason," as well. *Id.* ¶ 32.

### C. Arte Café's Payroll Practices

Plaintiff asserts that Arte Café "constantly had financial issues and difficulty paying its employees in full." *Id.* ¶ 36. She contends that, as a result, Arte Café frequently "attempted to devise methods to avoid paying their employees their wages, or all wages due and owing, including overtime as required." *Id.* ¶ 37. During the week of April 4-9, 2018 in particular, Arte Café allegedly "told its employees that it did not have sufficient funds to pay the payroll," and that it would "pay all funds due and owing by April 15, 2018." *Id.* ¶¶ 38, 40. According to Plaintiff, however, she—and others similarly situated—did not ultimately receive "the statutorily obligated amount of salary" for that time period. *Id.* ¶ 40. Rather, Plaintiff contends, they "only received their cash tips," and taxes were apparently still withheld from those cash tips. *Id.* ¶¶ 40-41. Plaintiff also asserts that she "protested the failure to pay all wages due and owing." *Id.* ¶ 39.

Plaintiff alleges that Arte Café changed the methods by which payment was made in late April 2018. *Id.* ¶ 18. In particular, Arte Café "verbally advised" its employees that it was "switching its pay cycle from a weekly payroll to a biweekly payroll." *Id.* ¶ 42. According to Plaintiff, however, Arte Café did not actually switch its pay cycle to a "biweekly payroll." *Id.* ¶ 43. Plaintiff alleges that, instead, "payments were simply deferred, some weeks were missed, payroll records were not reflective of date or times worked, and payment was made as much as twelve (12) days after the work was performed." *Id.* Plaintiff also alleges that "the payroll records [were] not reflective of any change to the wage notice." *Id.* ¶ 44. Plaintiff asserts furthers that, by telling its employees that it was making this switch, Arte Café "removed the consistency and understanding of the pay cycle for its employees," and as such, "utilized [the switch] as an opportunity to steal the wages from its employees," including Plaintiff. *Id.* ¶¶ 18-19. According to Plaintiff, Arte Café made this change because it "lacked sufficient funds to make payroll in full to their [sic] employees" at the time. *Id.* ¶ 20. In short, she alleges that Arte Café "failed to take any actions to reimburse [her] or those similarly situated for their unpaid wages." *Id.* ¶ 20.

## II.     Procedural History

Plaintiff filed this action on December 10, 2018. Dkt. 1. On April 4, 2019, Defendants filed a motion to compel arbitration based on a binding arbitration provision contained in the Employee New Hire Pack, an agreement Plaintiff received and signed prior to commencing her employment. *See* Dkts. 23, 23-4, 23-5. On April 18, 2019, Plaintiff filed a letter informing the Court that she did not oppose Defendants' motion to compel arbitration, but requesting that the Court retain jurisdiction "for any future actions." *See* Dkt. 24. The Court granted Plaintiff's request and stayed the case on April 19, 2019. *See* Dkt. 25.

On October 24, 2019, Plaintiff moved to reopen the case under Federal Rule of Civil Procedure 60(b), as well as for sanctions against Defendants, in light of their apparent default in the arbitration. *See* Dkt. 26. Plaintiff asserted that, after she filed for arbitration with the American Arbitration Association ("AAA") on June 24, 2019, the AAA requested that Defendants pay "their share of the filing fees," in the amount of $1,900, yet Defendants did not do so. *Id.* at 2. Plaintiff explained that, because Defendants ultimately failed to pay their share of the AAA filing fees and Plaintiff could not "afford the arbitrators [sic] fees to unilaterally arbitrate the case," the AAA terminated the case on October 23, 2019. *Id.* at 3.[3]

On November 20, 2019, the Court granted Plaintiff's motion to reopen the case, but denied Plaintiff's motion for sanctions. *See* Dkt. 32. The Court instructed the parties to meet and confer about next steps in this case, and to jointly submit a proposed schedule by December 4, 2019. *See id.* at 4. On December 6, 2019, however, Plaintiff filed a letter indicating that Defendants had been unresponsive and unwilling to meet and confer about next steps. *See* Dkt. 33. As a result, the Court ordered Defendants to respond to Plaintiff's Complaint by December 23, 2019. *See* Dkt. 34.

On December 23, 2019, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 36. In connection with their motion, Defendants also filed several affidavits and exhibits containing facts that contradicted the allegations set forth in the Complaint. *See* Dkts. 37-41. The memorandum of law filed in support of their motion relied heavily on Defendants' affidavits and exhibits, and the version of the facts contained therein. *See* Dkt. 42. Upon receiving a letter from Plaintiff arguing, among other things, that Defendants' motion was a "summary judgment motion cloaked as an alleged motion to dismiss," *see* Dkt. 43

---

[3] Indeed, the AAA stated that its reason for closing the case was because Defendants "ha[d] failed to submit the previously requested filing fee." *Id.* at Ex. 7.

at 1, the Court held a telephone conference with the parties on January 2, 2020. During the conference, the Court explained that it would not rely on facts outside of the Complaint at this stage in the litigation. Because Defendants' current motion referred extensively to the affidavits and exhibits containing facts that contradicted the Complaint's allegations, the Court ordered Defendants to re-file their motion to dismiss, consistent with the pertinent rules of procedure.

On January 5, 2020, Defendants re-filed their motion to dismiss. *See* Dkt. 45.[4] Plaintiff filed her opposition on January 21, 2020, *see* Dkt. 47, and Defendants filed their reply on January 26, 2020, *see* Dkt. 48.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation omitted). In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as

---

[4] The Court notes that Defendants' re-filed memorandum of law in support of their motion to dismiss, Dkt. 46, is virtually identical to their initial memorandum of law, Dkt. 42. Although Defendants have excluded the actual citations to the previously filed affidavits and exhibits, they did not change the substance of their motion when they re-filed it, and they still rely heavily on their own version of the facts, which largely contradict those set forth in the Complaint.

factual allegations.'" *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)). In other words, the Court must evaluate the motion to dismiss by "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## DISCUSSION

### I.    Plaintiff's FLSA and NYLL Claims

Plaintiff asserts claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Defendants Arte Café, Malta, and Marc based on Arte Café's alleged failure to pay wages. In particular, Plaintiff alleges that Arte Café violated the FLSA by failing to compensate her and other similarly situated employees "for all hours worked, each work week, as earned," Compl. ¶ 68, including by allegedly failing to pay the minimum wage for at least one work week, *id.* ¶ 70. Plaintiff alleges that Arte Café violated the NYLL in the same fashion. *Id.* ¶¶ 74-76. In her opposition, Plaintiff clarifies that her FLSA and NYLL claims are based on Defendants' "failure to actually pay wages when due and owing," i.e., "the prompt payment requirement." Pl. Opp'n, Dkt. 47, at 3.

"The FLSA provides that '[e]very employer shall pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage.'" *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (quoting 29 U.S.C. § 206(b)). To state a claim under the FLSA, a plaintiff must first show that: "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the

7

employment relationship is not exempted from the FLSA." *Pelgrift v. 335 W. 41st Tavern Inc.*, No. 14-CV-8934 (AJN), 2017 WL 4712482, at *1 (S.D.N.Y. Sept. 28, 2017) (citation omitted). Plaintiff has made this threshold showing, as she has adequately alleged that Arte Café is "an enterprise engaged in commerce as set forth under the FLSA," with "annual gross sales in excess of $500,000.00," Compl. ¶ 13,[5] that she was an "employee" under the FLSA's definition,[6] and that her employment was not exempt under the FLSA. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 32-33 (E.D.N.Y. 2015) (discussing classes of exempt and non-exempt employees).[7]

Moreover, although the FLSA "does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Rogers*, 148 F.3d at 55 (citing *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960)); *see also id.* at 57 ("[I]t is clear that the FLSA requires wages to be paid in a timely fashion."); *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014) ("While the statutory language of the FLSA does not prescribe any particular payment schedule, courts have consistently interpreted Section 206(a) of the statute to include a prompt payment requirement."). To determine whether the FLSA's "prompt payment requirement" has been violated, courts look to "objective standards." *Rogers*, 148 F.3d at 58. An employer's change to its pay schedule does not violate the prompt payment requirement where "the change: (a) is made for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c)

---

[5] An "enterprise engaged in commerce or in the production of goods for commerce" is defined as, among other things, an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "whose annual gross volume of sales made or business done is not less than $500,000." *See* 29 U.S.C. § 203(s)(1)(A)(i)-(ii).
[6] The FLSA defines "employee" as "any individual employed by an employer." *See* 29 U.S.C. § 203(e)(1).
[7] The definition of "employee" and "employer" under the NYLL are "nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *See Pelgrift*, 2017 WL 4712482, at *7.

8

is intended to be permanent; and (d) does not have the effect of evading the FLSA's substantive minimum wage or overtime requirements." *Id.*; *see also id.* at 59 ("A pay scheme that does not result in the direct evasion of the substantive minimum wage and overtime provisions of the FLSA may nevertheless violate the statute's implicit prompt payment requirement.").

The statutory language of the NYLL, on the other hand, specifically addresses the timing of payment of wages. The NYLL provides that employers must make timely payments of wages, and that "clerical and other worker[s]"[8] must be "paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." *See* N.Y. Lab. Law § 191(1)(d). Courts in this Circuit have analyzed the FLSA's "prompt payment requirement" and NYLL § 191(1)(d) together. *See, e.g.*, *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 425-26 (S.D.N.Y. 2017); *Belizaire*, 61 F. Supp. 3d at 353-54; *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *12 (E.D.N.Y. Dec. 13, 2016).

Defendants assert that Plaintiff's FLSA and NYLL claims must be dismissed because, they contend, the Complaint is "devoid of the necessary factual allegations" to state plausible claims for relief under these statutes, including "[h]ow much [Plaintiff] was supposed to be paid," "[h]ow many hours [Plaintiff] had worked," "whether such hours were to be compensated as 'straight' time or overtime," "how much [] Plaintiff had earned throughout her approximately six (6) months of employment," "how much [Plaintiff] would have earned if is [sic] she was properly compensated" under the FLSA and the NYLL, and "the amount of her lost wages for Defendants'

---

[8] The NYLL defines "clerical and other worker[s]" as "all employees not included in subdivisions four, five and six of this section, except any person employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week." N.Y. Lab. Law § 190(7). Subdivisions four, five, and six of Section 190 contain the definitions for a "manual worker," "railroad worker," and "commission salesman." *See* N.Y. Lab. Law § 190(4)-(6).

alleged failure to comply with these acts." *See* Defs. Mot., Dkt. 46, at 7-8. Defendants cite no relevant authority for their position that Plaintiff's Complaint must contain specific allegations as to those particular factors, and their vague and conclusory arguments are unpersuasive.[9] Moreover, Defendants entirely fail to address Plaintiff's contention that her claim is based specifically on a violation of the FLSA's and the NYLL's prompt/timely payment requirements.

Contrary to Defendants' arguments, Plaintiff adequately pleads that Arte Café violated the FLSA's prompt payment requirement and the NYLL's similar requirement to timely pay wages. In particular, Plaintiff pleads that in April 2018, Arte Café told its employees that it was switching from a weekly payroll to a biweekly payroll, Compl. ¶ 42, but that in reality, "payments were simply deferred, some weeks were missed, payroll records were not reflective of date or times worked, and payment was made as much as twelve (12) days after the work was performed," *id.* ¶ 43. Plaintiff alleges that Arte Café made its change in the pay schedule not for any legitimate business reason, but because it "lacked sufficient funds" to pay its employees, *id.* ¶ 20, and because

---

[9] In their reply brief, Defendants cite *Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043 (JGK), 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010) and *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094 (S.D. Iowa 2008). *See* Defs. Reply, Dkt. 48, at 5. These cases, however, lend no support to Defendants' position. As a preliminary matter, neither case involves the FLSA's prompt payment requirement or the NYLL's requirement to make timely payments. And the only language actually quoted by Defendants in their reply brief, from *Hart v. Rick's Cabaret Int'l Inc.*, is taken out of context. In *Hart*, the court denied defendants' motion to dismiss, finding that plaintiffs had alleged facts sufficient to state a claim for failure to pay the minimum wage under the FLSA because they "alleged that they worked as entertainers for the defendants . . . and that they were paid 'no wages' in connection with their work." *See Hart*, 2010 WL 5297221, at *4. Indeed, the court explained that plaintiffs' allegation that they were paid "no wages whatsoever" for a given time period was sufficient, without more, to plead a violation of the FLSA. *Id.* The court *rejected* defendants' argument that, in order to state a claim under the FLSA, the plaintiffs also had to specifically allege "the hours that they worked for which they were paid less than the statutory minimum wage," and distinguished the cases on which defendants had relied for that proposition. *See id.* As to those "inapposite" cases, the court noted that "it was necessary for the plaintiffs in those [other] cases to plead additional facts, such as the hours they had worked and the amount they had been paid, to permit the court to determine whether, on the facts alleged, they had been paid wages that fell below the statutory hourly rate" because those plaintiffs had "admitted that they had been paid *some* money in compensation for their services, but alleged that they had not been paid enough." *Id.* This single statement in no way stands for the proposition that, to state a claim for a violation of the prompt/timely payment requirements of the FLSA or the NYLL, plaintiffs must specifically plead "the hours they had worked and the amount they had been paid." In this respect, Plaintiff's FLSA and NYLL claims are unlike a typical minimum wage or overtime claim, in which the plaintiff must specifically plead facts such as the number of hours worked, the amount for which she was compensated, and the hours for which she did not receive minimum and/or overtime wages. *See, e.g.*, *Villanueva v. 179 Third Ave. Rest Inc.*, No. 16-CV-8782 (AJN), 2019 WL 4744707, at *4 (S.D.N.Y. Sept. 30, 2019).

it sought to "steal the wages from its employees," *id.* ¶19. She alleges further that Arte Café "[f]requently . . . attempted to devise methods to avoid paying" their employees "all wages due and owing," *id.* ¶ 37, and that, as a result, she—and other similarly situated employees—were not paid the minimum wage for at least one week, *see id.* ¶¶ 70, 75.

At this stage in the litigation, and accepting all facts in the Complaint as true, Plaintiff has adequately alleged that Arte Café's change in its pay schedule —"from a weekly payroll to a biweekly payroll"—resulted in an unreasonable delay of payment, was not made for a legitimate business reason, and had the effect of evading the minimum wage requirements. In particular, she alleges that she was not paid in a timely manner, and that Defendants withheld her wages, on at least one specific occasion in April 2018. *See id.* ¶¶ 38, 40-41. This is sufficient, at this stage, to plead that Defendants failed to timely pay wages in violation of both the FLSA and the NYLL. *See, e.g.*, *Gaughan*, 261 F. Supp. 3d at 426 ("Defendants' delay in paying Plaintiff her wages, either by failing to issue paychecks or by forward-dating her paychecks, violates the prompt payment requirements of the FLSA and NYLL."); *Belizaire*, 61 F. Supp. 3d at 353-54 ("[T]o the extent Defendant delayed making payments to Plaintiff, either by failing to issue him paychecks on a regular basis or by issuing checks that were returned for insufficient funds, Defendant failed to comply with the FLSA's prompt payment requirement . . . and similarly failed to pay Plaintiff 'in accordance with the agreed terms of employment,' in violation of Section 191(1)(d) of the NYLL."). Defendants' motion to dismiss Plaintiff's FLSA and NYLL claims as against Defendant Arte Café is therefore denied. *See Rogers*, 148 F.3d at 59-60; *Belizaire*, 61 F. Supp. 3d at 353-54.

The Court concludes, however, that Plaintiff's FLSA and NYLL claims against Defendants Malta and Marc must be dismissed for failure to state a claim. While it is undisputed that Plaintiff was an employee of Arte Café, whether Malta or Marc can be considered an "employer" under the

FLSA or the NYLL is a closer question. To determine whether an individual defendant is an "employer" for purposes of the FLSA, courts look to "the 'economic reality' of an employment relationship" and, in doing so, consider four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) and *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).[10] "No one of the four factors standing alone is dispositive. . . . Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Defendants argue that the Complaint "contains no factual allegations whatsoever of any wrongdoing by Defendant[] Malta," and instead, "merely alleges that Malta 'has supervisory control over Arte Café and is regularly engaged in its business operations.'" Defs. Mot. at 10. They are correct that the only allegations related to Defendant Malta are that he is "the principal of Arte Café," that he "has supervisory control over Arte Café," and that he is "regularly engaged in [Arte Café's] business operations." Compl. ¶ 6. The Complaint contains no other allegations as to Defendant Malta, his role at Arte Café in general, or his role with respect to Plaintiff's employment or termination in particular. Plaintiff does not allege, for instance, that Defendant Malta had the power to hire or fire employees, that he supervised or controlled her—or other employees'—work schedules or conditions of employment, that he determined the rate or method of her compensation, or that he maintained any employment records. Plaintiff's conclusory

---

[10] "[D]istrict courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA," and have therefore applied the "economic reality analysis to both statutes." *See Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019) (citations omitted).

allegations about Defendant Malta's "supervisory control" and the contention that he is "regularly engaged" in the business are insufficient to conclude that he is an "employer" for purposes of the FLSA or the NYLL. *See Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*, No. 17-CV-4058 (RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018). Plaintiff's FLSA and NYLL claims must therefore be dismissed against Defendant Malta.

Although neither party addresses the allegations as to Defendant Marc's purported role as an "employer" under the FLSA or the NYLL, they are similarly insufficient to plausibly allege that he is an "employer" under either statute. Even accepting all of the allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, Defendant Marc appears to have even less of a supervisory or managerial role at Arte Café than Defendant Malta. Plaintiff merely alleges that Defendant Marc is an "employee of Arte Café as the restaurant's manager." Compl. ¶ 7. Although she asserts that Defendant Marc was her manager and that she reported her complaints about Defendant Lopez to him, she pleads no factual allegations as to his ability to hire or fire employees, to supervise or control work schedules or conditions of employment, to determine the rate or method of compensation, or to maintain employment records. As such, Plaintiff's claims under the FLSA and the NYLL must also be dismissed as to Defendant Marc. Plaintiff, however, will be permitted to amend her complaint with respect to her FLSA and NYLL claims against Defendants Malta and Marc to the extent she has a good faith basis to do so.

## II. Plaintiff's Title VII Claim

Plaintiff brings a claim for retaliation under Title VII of the Civil Rights Act of 1964 against Defendants Arte Café, Malta, and Marc. "Title VII provides that '[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89-90 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–3(a)). As a preliminary matter, however, individuals cannot be held liable under Title VII. *See Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 61-62 (2d Cir. 2016). Plaintiff's Title VII claim is therefore dismissed as against Defendants Malta and Marc.

To state a claim for retaliation under Title VII, a plaintiff must plausibly allege that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). Defendants argue that Plaintiff's retaliation claim must be dismissed because the Complaint is "devoid of factual allegations" that, among other things, Plaintiff "opposed an unlawful employment practice," that "the employer had knowledge of the protected activity," that "an adverse employment action was taken against [Plaintiff]," or that "a causal connection exists between the protected activity and the adverse employment action." Defs. Mot. at 9. The Court disagrees. Accepting the allegations in the Complaint as true, Plaintiff has indeed satisfied the four elements required to establish a prima facie case of retaliation under Title VII.

First, Plaintiff has sufficiently alleged that she engaged in a protected activity. An employee engages in protected activity when she "ha[s] a good faith, reasonable belief" that she has made a complaint "opposing an employment practice made unlawful by Title VII." *See Kelly*, 716 F. 3d at 14 (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)). "A 'protected activity' under Title VII does not have to 'rise to the level of a formal complaint,'" but rather may "include[] activities of 'making complaints to management,' . . . and may be in the

14

form of a simple 'objection voiced to the employer.'" *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 149 (S.D.N.Y. 2001) (citations omitted); *see also Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015) ("[Title VII] protects [formal] as well [as] informal protests of discriminatory employment practices, including making complaints to management[.]") (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). "Unlawful discrimination based on . . . national origin is clearly proscribed by Title VII." *Rodriguez*, 173 F. Supp. 2d at 150. Accordingly, Plaintiff has adequately alleged that she engaged in protected activity by complaining "[n]umerous times" to Marc, her manager, about Lopez's actions of making "derogatory" and "disparaging" comments about her national origin. *See* Compl. ¶¶ 22-23, 25-26; *see also, e.g.*, *Singa v. Corizon Health, Inc.*, No. 17-cv-4482 (BMC), 2018 WL 324884, at *5 (E.D.N.Y. Jan. 8, 2018) ("Retaliation is actionable under Title VII when the plaintiff engaged in a protected activity, such as complaining about national origin discrimination and, as a result, her employer took an adverse action in retaliation.") (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014)) (internal quotation marks and alteration omitted); *Barounis v. N.Y.C. Police Dep't*, No. 10 Civ. 2631 (SAS), 2012 WL 6194190, at *13 (S.D.N.Y. Dec. 12, 2012) ("It is undisputed that plaintiff engaged in a protected activity when he complained . . . about discrimination based on race and national origin.").[11]

Next, Plaintiff has sufficiently alleged that her employer was aware of her protected activity. "[F]or purposes of a prima facie case, a plaintiff may rely on general corporate knowledge of her protected activity to establish the knowledge prong of the prima facie case." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and citation

---

[11] Contrary to Defendants' assertion that Plaintiff has "fail[ed] to provide any details regarding her alleged complaints – such as when and to whom they were made and their content or subject matter," Defs. Reply at 6, Plaintiff does indeed specifically allege when, to whom, and about what these complaints were made. *See, e.g.*, Compl. ¶¶ 24-29.

15

omitted); *see also Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) ("[N]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."). "Courts have found general corporate knowledge to arise when a supervisor, corporate officer, or employee whose job is to investigate and resolve discrimination complaints becomes aware of the protected activity." *Armstrong v. Metro. Transp. Auth.*, No. 07 Civ. 3561 (DAB), 2014 WL 4276336, at *20 (S.D.N.Y. Aug. 28, 2014); *see also, e.g.*, *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) (plaintiff's complaints to supervisors were sufficient to satisfy the second element of her retaliation claim); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 270 (S.D.N.Y. 2007) (plaintiff's "two complaints to his supervisor [] regarding the purportedly offensive conduct of his coworkers . . . clearly satisfy the 'knowledge requirement' of the . . . prima facie standard"). Plaintiff's complaints to her manager, Defendant Marc, are therefore sufficient to satisfy this element.

Because it is undisputed that Plaintiff was terminated from her job at Arte Café, *see, e.g.*, Compl. ¶ 31, Defs. Mot. at 5, she has also satisfied the third prong—i.e., that she suffered a materially adverse action.[12] *See Schaper*, 408 F. Supp. 3d at 391 ("Termination has consistently been recognized as an adverse employment action [for purposes of retaliation claims under Title VII].") (collecting cases); *see also Vega*, 801 F.3d at 90 ("[I]n the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

---

[12] In light of the fact that the present action is premised—in large part—on Plaintiff's termination, and specific allegations as to her termination are clearly included in the Complaint, *see, e.g.*, Compl. ¶¶ 1, 31, 34-35, Defendants' contention that the Complaint is "devoid of factual allegations" that "an adverse employment action was taken against [Plaintiff]" is, at best, meritless and, at worst, asserted in bad faith.

Finally, Plaintiff has plausibly alleged a causal connection between her complaints about Defendant Lopez's alleged misconduct, on the one hand, and her termination, on the other. A causal connection can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). "[E]ven without direct evidence of causation, a plaintiff can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Zann Kwan*, 737 F.3d at 845 (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001)) (internal quotation marks and alterations omitted); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."). The close temporal proximity between Plaintiff's reports of Defendant Lopez's actions—shortly after the April 15, 2018 alleged assault, Compl. ¶ 26, and again on May 18, 2018, *id.* ¶ 28—and her termination "[o]ne week after" the May 18, 2018 incident, *id.* ¶ 31, is plainly sufficient to establish causation at this stage. *See e.g.*, *Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011) (finding that six weeks is sufficient); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (finding that five months is sufficient); *Schaper*, 408 F. Supp. 3d at 392 (finding that two months is sufficient). Accordingly, Plaintiff's Complaint states a claim for retaliation under Title VII against Defendant Arte Café.

### III. Plaintiff's Battery Claim

Lastly, Plaintiff also brings a claim for battery against Defendant Lopez. To state a claim for battery under New York law, a plaintiff must show "that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's

17

consent." *Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016) (citation omitted); *see id.* ("The elements of a civil 'battery' are (1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent.") (citation omitted). As Plaintiff alleges that Lopez "physically assaulted [her] by pushing her at the bar area" on one occasion, Compl. ¶ 24, and "struck her in her back near the bar area" on another, *id.* ¶ 27, Plaintiff has plausibly alleged facts sufficient to sustain a claim for battery against Lopez. *See, e.g.*, *Wright v. Musanti*, No. 14-cv-8976 (KBF), 2017 WL 253486, at *6 (S.D.N.Y. Jan. 20, 2017). Defendants' assertion that the complaint contains only "threadbare assertions" and "a formulaic recitation of the elements of a cause of action" because it alleges that one of the assaults occurred in the "bar area," as opposed to the "kitchen," is not only meritless, but also ignores the relevant motion to dismiss standard and the other allegations asserting that Lopez physically assaulted Plaintiff, regardless of where that assault occurred. "[A]ccepting all factual allegations in the complaint as true" as the Court must, *Chambers*, 282 F.3d at 152, Plaintiff states a claim for battery. Defendants' motion to dismiss Plaintiff's battery claim is therefore denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is denied as to Defendant Arte Café and Defendant Lopez. Defendants' motion is granted as to Defendant Malta and Defendant Marc, but the Court grants Plaintiff leave to amend her complaint to cure the deficiencies identified in this opinion as to the FLSA and NYLL claims, to the extent she has a good faith basis to do so. The Title VII claim asserted against Defendants Malta and Marc is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 45. No later than April 30, 2020, the parties shall submit a joint letter to the Court proposing next steps in this action.

Finally, in connection with Defendants' default in the AAA arbitration, the Court noted that

Defendants' conduct appeared to "smack of an intentional pattern of gamesmanship and delay." *Stanley v. A Better Way Wholesale Autos, Inc.*, No. 17-cv-01215-MPS, 2018 WL 3872156, at *7 (D. Conn. Aug. 15, 2018); *see* Dkt. 32 at 4.  In their actions and filings since that observation, Defendants have not demonstrated otherwise.  Defendants are hereby advised that if they fail to cooperate in this action or participate in good faith—including by failing to meet and confer with Plaintiff about next steps—the Court may consider imposing sanctions against them pursuant to Federal Rules of Civil Procedure 16(f) and/or 37(b).  *See Roberts v. Bennaceur*, 658 F. App'x 611, 614 (2d Cir. 2016).

SO ORDERED.

Dated:   April 16, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge