USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUTH SARIT, *on behalf of herself and all others similarly situated*,

                    Plaintiff,

                    v.

WESTSIDE TOMATO, INC., *doing business as* ARTE CAFÉ, ROBERT MALTA, MARCO ORNETTI, and ERNESTO MATIAS LOPEZ,

                    Defendants.

No. 18-CV-11524 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Ruth Sarit filed this action against her former employer Westside Tomato Inc. d/b/a Arte Café ("Arte Café"); Robert Malta, a principal of Arte Café; the restaurant's manager Marco Ornetti; Ernesto Matias Lopez, an employee of Arte Café; as well as "John Does 1-50" and "Business Entities A-J," asserting claims for violations of Title VII, the Fair Labor Standards Act, the New York Labor Law, and battery. Before the Court is the parties' motion for approval of their settlement agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See* Dkt. 86. For the following reasons, the Court cannot approve the agreement as currently drafted in light of its broad non-disparagement provision. *See id*. at 9.

    District courts must scrutinize FLSA settlements to determine if they are fair and reasonable. *See Cheeks*, F.3d at 201, 206. In doing so, courts must evaluate the totality of circumstances including "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the

parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citation omitted).

In this case, the Court is prepared to approve of nearly every aspect of the parties' proposed agreement. First, the overall settlement amount of $20,000 reflects "a reasonable compromise of disputed issues," *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013), particularly in light of the parties' representation that the restaurant is facing financial difficulties due to the COVID-19 pandemic. Considering the "uncertainty of recovering any damages if the litigation continues," *Wiles v. Logan Staffing Sols., Inc.*, No. 18-CV-9953 (RA), 2020 WL 996735, at *1 (S.D.N.Y. Mar. 2, 2020), the Court finds the settlement amount to be reasonable.

Second, the $10,000 award for attorney's fees and costs is reasonable. Although that fee amounts to half of the overall settlement amount, and although district courts in the Second Circuit more routinely approve fees to counsel totaling one third of the recovery amount, *see Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (collecting cases), there is nothing necessarily problematic about a settlement in which the plaintiff's attorney receives more than a third of the settlement payment. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) ("[T]here is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit."). In *Fisher*, the district court had rejected an FLSA settlement that apportioned roughly $23,000 to plaintiff's counsel in fees and costs and $2,000 to the plaintiff himself, on the basis of the court's view that "the 'maximum fee percentage' that counsel may be awarded in an FLSA suit is generally

limited to 33% of the total settlement amount." *Id*. at 597, 602. The court rejected this proposition, explaining:

> Neither the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, [the] FLSA simply provides for a "reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Nothing in this clause or the surrounding text supports the conclusion that a "reasonable attorney's fee" must be a "proportional" fee.

*Id*. at 603. The court further explained that a "proportionality rule would . . . be inconsistent with the remedial goals of the FLSA," because members of the bar should be encouraged to represent individuals whose run-of-the-mill wage-and-hour claims might be too small to otherwise justify the expenses of litigating. *Id*.

For that reason, although the percentage of an overall award reserved for attorney's fees can be a "helpful" factor in determining whether the fees are reasonable, it is not "determinative." *Id*. The appropriateness of a fees award depends on whether the award is justified by counsel's contemporaneous time records documenting the hours expended and the nature of work performed, as well as information regarding counsel's experience and practice. *See Strauss v. Little Fish Corp.*, No. 19-CV-10158 (LJL), 2020 WL 4041511, at *9 (S.D.N.Y. July 17, 2020). *See also Alt v. Soc. Impact 360, Inc.*, No. 20 CIV. 4478 (ER), 2020 WL 8509845, at *2 (S.D.N.Y. Dec. 2, 2020) (even in contingency fee cases, "courts in this circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees"). The Court has reviewed Plaintiff's counsel's records, *see* Dkt. 86 at 13–30, which reflect the significant time expended on this case in the more than two years since it was filed. In that period, the parties have litigated a motion to compel arbitration and two motions to dismiss. Because the fee for Plaintiff's counsel is reasonable given the time he expended on the case, the Court approves the agreement's provision regarding attorney's fees.

Third, the Court approves the parties' release of claims. "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *See Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Here, the release provision arguably bears some of these features. In addition to Plaintiff's releasing Defendants "from all wage and hour claims against them . . . under the Fair Labor Standards Act, the New York Labor Law or the common law of New York," the agreement also contains a "mutual release as to all other claims." Dkt. 86 at 7-8. In certain respects, this broad release "resembles the overly broad provisions regularly rejected by courts in the Second Circuit." *Chevalier v. Staffpro, Inc.*, No. 20-CV-7006 (RA), 2021 WL 949749, at *2 (S.D.N.Y. Mar. 12, 2021) (citing *Gurung*, 225 F. Supp. 3d at 228).

The Court nonetheless finds the mutual release to be appropriate, for two reasons. First, the release is truly mutual. Broad mutual releases tend to be problematic when they are reciprocal only in a "formal" sense, and where they "benefit only the employer defendant, who realistically may be less likely than the employee plaintiff to have latent claims against its adversary." *Gurung*, 226 F. Supp. 3d at 229. But courts tend to approve such provisions where "the releases are indeed reciprocal and . . . provide Plaintiff a practical benefit comparable to the benefit that Defendants will receive." *See Daniels v. Haddad*, No. 17-CV-8067 (RA), 2018 WL 6713804, at *1 (S.D.N.Y. Dec. 17, 2018) (approving a broad mutual release where the parties described the potential claims the defendants may have had against the plaintiff). Here, Defendants have already asserted claims against Plaintiff and her husband arising out of their employment at the restaurant. *See* Dkt. 76 ¶¶ 44, 102; *see also* Dkt. 86 at 6 (Defendants "claim

4

Common Law Fraud and Civil Conspiracy against Plaintiffs"). Releasing the parties from all claims they have against each other will thus provide Plaintiff with a tangible and practical benefit. Second, courts look more favorably upon broad mutual release provisions where "the employer and employee have ceased their employment relationship" and the mutual release therefore "operates as a walk away provision [that] permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit." *See Strauss*, 2020 WL 4041511, at *5 (collecting cases). The Court finds this reasoning to be applicable here, and will thus approve the release provisions as drafted by the parties.

The Court cannot, however, approve of the agreement's non-disparagement provision. *See* Dkt. 86 at 9. When the parties reported that they had reached a settlement in principle, the Court specifically advised them that it "will not approve of settlement agreements in which . . . Plaintiffs are 'bar[red] from making any negative statement about the defendants,' unless the settlement agreement 'include[s] a carve-out for truthful statements about [P]laintiffs' experience litigating their case.'" *See* Dkt. 84 (quoting *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (internal quotation marks omitted)). The parties' agreement nevertheless includes precisely such a provision. As in *Lazaro-Garcia*, the agreement "includes a non-disparagement provision that bars both Plaintiff and Defendants from making disparaging comments about each other." *Lazaro-Garcia*, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015). Specifically, the provision bars the parties from "directly or indirectly, in any capacity or manner," making "any . . . statement of any kind that might reasonably construed to be derogatory or critical of, negative toward, or harmful to" the other party, "*whether true, false, or mere opinion*." Dkt. 86 at 9 (emphasis added). As the Court stated in *Lazaro-Garcia*, a non-disparagement provision that does not "include a carve-out for

5

truthful statements about plaintiffs' experience litigating their case" would "contravene[ ] the remedial purposes of the [FLSA]." *Lazaro-Garcia*, 2015 WL 9162701, at *3. *See also Brittle v. Metamorphosis, LLC*, No. 20 CIV. 3880 (ER), 2021 WL 606244, at *3 (S.D.N.Y. Jan. 22, 2021) ("[A] non-disparagement provision that prevents a plaintiff from making truthful statements about her experience litigating the case" is a "factor[ ] that preclude[s] approval" of a FLSA settlement agreement.). Because this provision would operate to bar the plaintiff from making true statements about her experiences litigating this case, the Court declines to approve it.

Where, as here, "a district court concludes pursuant to *Cheeks* that a proposed settlement is unreasonable . . . in part, the court cannot simply rewrite the agreement — it must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. Accordingly, no later than June 2, 2021, the parties shall proceed in one of the following ways:

(1) The parties may file a revised settlement agreement that comports with this order, in particular by revising or removing the non-disparagement provision;

(2) The parties may stipulate to a dismissal of this action without prejudice, as the Second Circuit has not expressly held that such settlement agreements require court approval. *See Cheeks*, 796 F.3d at 201 n.2;

(3) The parties may file a joint letter indicating their intention to abandon the settlement agreement and continue pursuing this litigation.

SO ORDERED.

Dated:   May 19, 2021
         New York, New York

Ronnie Abrams
United States District Judge